# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBBIE SHARE, individually and on behalf of all persons similarly situated, | CASE NO. 1:21-cv-04839-JHR-SAK |
| Plaintiff, | CIVIL ACTION |
| vs. | |
| AMERICAN MERCHANDISING SPECIALISTS, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## UNOPPOSED MOTION FOR APPROVAL OF
## <u>FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT</u>

## **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................1

II.  PROCEDURAL BACKGROUND ................................3

III. THE TERMS OF THE SETTLEMENT AGREEMENT...................................4

   A.  The Settlement Collective Members ..............................4

   B.  Calculation and Distribution of the Gross Settlement Amount ...................5

   C.  Release of Claims ......................................7

   D.  Plaintiff's Counsel's Fees and Costs ..........................8

IV. ARGUMENT ...........................................................9

   A.  The Terms of the Settlement are Fair and Reasonable. .............................10

   B.  The Settlement Agreement Is The Product of Informed, Non-Collusive Negotiation. ..........................................12

   C.  The Terms of the Settlement are Fair and Reasonable. .............................14

   D.  The Attorney's Fee Award to Plaintiff's Counsel is Reasonable. ...............15

      1.  The Size of the Fund Created Supports the Requested Fee. .....................19

      2.  The Response of the Plaintiff Supports the Requested Fee. ....................20

      3.  The Skill and Efficiency of Class Counsel Support the Requested Fee. ..20

      4.  The Amount of Time Devoted to the Case Supports the Requested Fee.22

      5.  The Awards in Similar Cases Supports the Requested Fee. ....................22

V.  CONCLUSION................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Austin v. Pennsylvania Dep't of Corrs.*,
876 F.Supp. 1437 (E.D. Pa. 1995).......................................................................13

*Barbee v. Big River Steel, LLC*,
927 F.3d 1024 (8th Cir. 2019) .............................................................................16

*Bredbenner v. Liberty Travel, Inc.*,
No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)........ 9, 18, 19

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945) ...........................................................................................15

*Brown v. TrueBlue, Inc.*,
No. 1:10-CV-00514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ...................14

*Brumley v. Camin Cargo Control, Inc.*,
No. CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ................9

*Camp v. Progressive Corp.*,
No. CIV.A. 01-2680, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ...................13

*Chemi v. Champion Mortg.*,
No. 2:05-CV-1238(WHW), 2009 WL 1470429 (D.N.J. May 26, 2009) 18, 19, 20

*Domingue v. Sun Elec. & Instrumentation, Inc.*,
No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) .....................13

*Evans v. Jeff D.*,
475 U.S. 717 (1986) ..................................................................................... 16, 20

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
604 F. Supp. 446 (E.D. Pa. 1985).......................................................................14

*Galt v. Eagleville Hosp.*,
310 F. Supp. 3d 483 (E.D. Pa. 2018)...................................................................22

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................................10

*Green v. Ventnor Beauty Supply, Inc.*,
  No. 118CV15673NLHAMD, 2019 WL 2099821, (D.N.J. May 14, 2019) .........16

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ................................................................18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...........................................................................16

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ................................................................17

*In re Cendant Corp. Prides Litig.*,
  243 F.3d 722 (3d Cir. 2001) ................................................................19

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................17

*In re Chickie's & Pete's Wage & Hour Litig.*,
  No. CIV.A. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ................ 10, 15

*In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*,
  410 F. Supp. 659 (D. Minn. 1974) .......................................................13

*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009) ........................................................... 17, 18

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
  No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) .................................18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................... 17, 18

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................12

*In re Rite Aid Corp. Sec. Litig.*,
  396 F. 3d 294 (3d Cir. 2005) ...............................................................19

*Klier v. Elf Atochem N. Am., Inc.*,
658 F.3d 468 (5th Cir. 2011) ...............................................................................20

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*,
679 F.2d 1350 (11th Cir. 1982) ............................................................................9

*Mabry v. Hildebrandt*,
No. CV 14-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015) ..........................23

*Maddy v. Gen. Elec. Co.*,
No. CV 14-490-JBS-KMW, 2017 WL 2780741 (D.N.J. June 26, 2017) ...............
........................................................................................................ 18, 20, 21

*Melgar v. OK Foods*,
902 F.3d 775 (8th Cir. 2018) ...............................................................................17

*Mulroy v. Nat'l Water Main Cleaning Co. of New Jersey*,
No. CIV.A. 12-3669 WJM, 2014 WL 7051778 (D.N.J. Dec. 12, 2014) .............17

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ...............................................................................12

*Salinas v. U.S. Xpress Enterprises, Inc.*,
No. 113CV00245TRMSKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ......16

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
157 F. Supp. 2d 561 (E.D. Pa. 2001) ...................................................................12

*Singleton v. First Student Mgmt. LLC*,
No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) .................10

*UAW v. Gen. Motors Corp.*,
No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)..............13

**Statutes**

29 U.S.C. § 201 ......................................................................................................3

29 U.S.C. § 202 ....................................................................................................15

29 U.S.C. § 216(b) ....................................................................................... 3, 9, 16

29 U.S.C. § 260 ....................................................................................................11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................10

**Other Authorities**

Manual for Complex Litigation (Second) §30.44 (1986)........................................12

Plaintiff Debbie Share, individually and on behalf of all persons similarly situated, respectfully files this Unopposed Motion for Approval of FLSA Collective Action Settlement Agreement. The Parties' Settlement Agreement (the Agreement) is attached hereto in support of this Motion.

## I.      INTRODUCTION

Plaintiff Debbie Share ("Share" or "Plaintiff") filed this action on March 11, 2021. Plaintiff alleged that Defendant American Merchandising Specialists, Inc. ("AMS" or "Defendant") classified her and other similarly situated Field Representatives as exempt employees, and, as a result, failed to pay them overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and New Jersey law. In the months that followed, the Parties agreed to explore early alternative dispute resolution. After an exchange of payroll data, a comprehensive damages analysis, and extensive negotiations, the Parties have resolved this Fair Labor Standards Act litigation on behalf of Plaintiff and other Field Representatives who have worked for AMS. This Motion seeks the Court's approval of the Parties' Settlement Agreement ("Settlement," "Settlement Agreement" or "Agreement"), which is attached as Exhibit 1 to Plaintiff's Motion.

The Settlement resolves Plaintiff's claims for unpaid overtime compensation in connection with her work for Defendant for a gross payment of Five Hundred Thousand Dollars ($500,000.00) (the "Gross Settlement Amount"). Agreement ¶

1

10(f). Specifically, the Settlement provides that each Settlement Collective Member is eligible to receive a *pro rata* share based on the number of weeks he or she worked more than forty (40) hours for AMS during the relevant time period. Agreement ¶¶ 20(a)-(b). Following the Court's order granting final approval of the Settlement, Settlement Collective Members will be sent settlement checks. By cashing or depositing their Settlement Checks, Settlement Collective Members will release their claims against AMS. *Id.*at ¶¶ 10(r), 21, 25.

After a thorough investigation of the facts and detailed analyses of payroll and timekeeping data produced by Defendant, Plaintiff's Counsel believes that the Settlement represents an excellent result for Plaintiff and the Settlement Collective Members, as there is a strong possibility that the Action, if not settled now, might not result in any recovery or a recovery far less favorable. *See* Declaration of Camille Fundora Rodriguez ("Rodriguez Decl.") ¶¶ 12-13, 20. The Settlement is a fair and reasonable resolution of a *bona fide* dispute, and it furthers the purposes of the FLSA by facilitating payment of unpaid overtime compensation to the Settlement Collective members whose claims might otherwise be too small to be pursued individually.

Accordingly, Plaintiff respectfully requests that the Court issue the accompanying proposed Approval Order: (1) granting approval of the Settlement Agreement pursuant to the Fair Labor Standards Act; (2) finding that the Settlement

Collective Members may proceed as a collective pursuant to 29 U.S.C. § 216(b) for settlement purposes only; (3) appointing Plaintiff Debbie Share as the representative of the Settlement Collective and approving the proposed service award in the amount of $7,500 for her efforts in prosecuting the action and for her broader general release of wage and hour claims in favor of Defendant; (4) approving Plaintiff's Counsel's fees in the amount of one third of the Gross Settlement Amount (*i.e.*, $166,666.67) and costs not to exceed $6,500.00; (5) appointing Angeion Group as the Settlement Administrator and approving costs of settlement administration up to $20,000.00 to be paid out of the Gross Settlement Amount; and (6) dismissing the Action with prejudice pursuant to the terms of the Settlement Agreement, and granting final judgment; and (7) retaining jurisdiction to oversee and enforce the Settlement Agreement. Defendant does not oppose this Motion.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed this action against AMS in the United States District Court for the District of New Jersey on March 11, 2021, alleging overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New Jersey state law. *See* Dkt. No. 1. Therein, Plaintiff alleged that AMS and improperly classified its Field Marketing Representatives, Field Sales Representatives, Product Advisors and other similar roles (collectively, "Field Representatives") as exempt from the FLSA and as a result, did not pay them overtime for hours regularly worked in excess

3

of forty (40) hours in a workweek. *Id*. Defendant filed its answer denying Plaintiff's allegations and asserting affirmative defenses. *See* Dkt. No. 13. Plaintiff filed a First Amended Collective Action Complaint on February 11, 2022. *See* Dkt. No. 38.[1]

The Parties discussed a potential early resolution of the action and submitted a Stipulation and Proposed Order to Stay the Case Pending ADR and Tolling, which the Court granted on August 18, 2021. *See* Dkt. No. 28. On October 7, 2021, the Parties participated in a mediation session before experienced mediator, Honorable Joel Schneider, United States Magistrate Judge (Ret.). The Parties were unable to reach a settlement at the first day of mediation but worked diligently to exchange additional data and participated in a second day of mediation on November 3, 2021. Shortly following the second day of mediation, with the continued assistance of Judge Schneider, the Parties agreed to settle Plaintiff's claims according to the terms of the Settlement Agreement.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Collective Members

The Agreement provides that the Settlement Collective Members include Plaintiff Share and all persons who worked for AMS and were paid on a salary basis by AMS to perform brand advocacy and merchandising services in the United States

---

[1] Plaintiff's First Amended Collective Action Complaint removed the Rule 23 class claims under New Jersey law as Defendant has indicated and its records support that there is not sufficient numerosity to bring Rule 23 claims under New Jersey law.

from October 14, 2018 to February 20, 2021, and who were classified as exempt from overtime requirements. There are approximately 367 members of the Settlement Collective. *See* Agreement ¶ 10(q).

Importantly, only Settlement Collective Members who sign, cash, or deposit their checks will release claims for unpaid overtime against AMS; the rights of those who do not participate in the Settlement will not be affected. Agreement ¶¶ 10(r), 25; Rodriguez Decl. ¶ 17.

### B.    Calculation and Distribution of the Gross Settlement Amount

The gross amount to be paid by Defendant as part of the Settlement (the "Gross Settlement Amount") is $500,000.00. Agreement ¶ 10(f). Pursuant to the Agreement, forty-five (45) days after the Approval Order, Defendant shall deposit the Settlement Funds in Qualified Settlement Fund established by the Settlement Administrator. *Id.* at ¶ 15.

The Gross Settlement Amount includes amounts to cover: (1) service award to Named Plaintiff Debbie Share in the amount of $7,500 for her efforts in bringing and prosecuting this matter and for her broader release of wage and hour claims in favor of Defendant; (2) the payment of Plaintiff's Counsel's attorneys' fees not to exceed one-third (1/3) of the Gross Settlement Amount (*i.e.*, $166,666.67), plus Plaintiff's Counsel's out-of-pocket costs that are currently estimated to be $5,830.51, and which are not expected to exceed $6,500.00; and (3) settlement

administration costs not to exceed $20,000,00. Agreement ¶ 10(h). Defendant will separately pay the employer's share of payroll taxes attributable to the Settlement Awards and its own attorneys' fees and costs. *Id.* ¶ 10(f).

After subtracting these amounts from the Gross Settlement Amount, the balance of the Gross Settlement Amount (*i.e.*, the "Net Settlement Amount") shall be used to calculate settlement awards for each Settlement Collective Member. Specifically, "(a) [t]he amount of $150 per Settlement Collective Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Settlement Collective Member so that each Settlement Collective Member receives at least $150 in exchange for their release in this Settlement Agreement; and (b) in addition to the $150 payment set out in (a) above, Settlement Collective Members shall receive *a pro rata* portion of the Net Settlement Agreement as follows:

   i.   For each workweek during which the Settlement Collective Member recorded working more than 40 hours in one week during the Relevant Time Period, he or she shall receive one (1) settlement share.

   ii.  The total number of settlement shares for all Settlement Collective Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per-share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award."

*Id.* at ¶¶ 20(a)-(b).

Settlement Award checks will be mailed to each Settlement Collective

Member and will be negotiable for one hundred eighty (180) days from the date they are initially mailed. *Id.* at ¶ 23. When 90 days of that 180-day check-cashing period has expired, the Settlement Administrator will mail and email a reminder letter to any Settlement Collective Members who have not yet cashed their checks to inform them of the 180-day deadline. During the last 60 days of the 180-day check-cashing period, the Settlement Administrator will call Settlement Collective Members who have not yet cashed their checks to remind them to do so. *Id.*

For tax purposes, one-half of each Settlement Award shall be deemed payment of alleged unpaid wages, subject to all legally required garnishments, liens, wage withholding orders, regular withholding, and similar obligations, and reported on an IRS Form W-2. The remaining one-half of each Settlement Award shall be deemed compensation for interest and liquidated damages, shall not be subject to payroll withholdings, and shall be reported on an IRS Form 1099. *Id.* at ¶ 22.

### C.    Release of Claims

The Settlement Awards will contain a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check, the Settlement Collective Member agrees to opt in to this collective action, defined by its caption as follows:

> By depositing or cashing this check, I am opting into and affirm my release of American Merchandising Specialists, Inc. and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Share v. American*

> *Merchandising Specialists, Inc.*, No. 1:21-cv-04839-JHR-SAK (D.
> N.J.). I affirm that I will not sue or assert any of the Settlement
> Collective Released Claims, including FLSA claims, against any of
> the Released Parties.

*Id.* at ¶ 21.

In exchange for the Settlement benefits, for the time period from October 14, 2018 to February 20, 2021, the participating Settlement Collective Members will release AMS and its parent companies, subsidiaries, affiliates, business units, members, shareholders, and its predecessors and successors, officers, directors, agents, employees, and assigns of all legal or equitable claims (including, but not limited to, claims for reimbursement of unpaid overtime wages, liquidated damages, interest, penalties, attorneys' fees and litigation costs and expenses) asserted in or reasonably related to the allegations in the Operative Complaint, including without limitation all such claims for unpaid regular or overtime wages brought pursuant to the FLSA or any other federal, state, or local statute, regulation, rule, or common law theory. AMS agrees that this Settlement Agreement may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims with respect to individuals who did not specifically release those FLSA claims; however, AMS does not waive the right to assert other defenses to those claims regarding timeliness, scope and/or applicability of exemptions. *Id*. at ¶ 10(l); (r).

**D.    Plaintiff's Counsel's Fees and Costs**

Pursuant to the Settlement Agreement, Plaintiff's Counsel seeks attorneys' fees and costs in the amount of $166,666.67 for reimbursement of attorneys' fees, plus Plaintiff's Counsel's out-of-pocket costs that are currently estimated to be $5,830.51, and which aren't expected to exceed $6,500.00. Agreement ¶ 10(h); Rodriguez Decl. ¶ 39.

## IV.    ARGUMENT

The Parties now seek the Court's approval of their Settlement. The Settlement represents a fair and reasonable compromise of a *bona fide* dispute concerning the legality of Defendant's compensation practices with respect to Plaintiff and the Settlement Collective Members during the relevant time period.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee…affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The standard for approval of an FLSA collective action adopted by the district courts in the Third Circuit simply requires that a compromise reached is "fair and reasonable" and furthers the purpose of the FLSA. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Bredbenner v. Liberty Travel, Inc*., No. CIV.A. 09-1248

MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011); *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014); *In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014).

### A. The Terms of the Settlement are Fair and Reasonable.

Because the Third Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See id.* at *2 (citing *Girsh v. Jepson*, 521 F.2d 153, 157–58 (3d Cir. 1975)). Once the settlement is found to be fair and reasonable, the Court also assesses whether the agreement furthers the purpose of the FLSA. *See Singleton*, 2014 WL 3865853 at *8.

Here, the Parties hotly contested the claims and defenses asserted in the Lawsuit. Plaintiff alleged AMS misclassified Plaintiff and the Settlement Collective Members as exempt and failed to pay them overtime. AMS argued that Plaintiff and the Settlement Collective Members were properly classified as exempt and were paid properly. *See* Rodriguez Decl. ¶ 14.

Further, Plaintiff argued that she was similarly situated to the other Field Representatives in the terms of relevant job duties and compensation practices, regardless of the job position, length of time, or location worked for AMS, while

10

AMS maintained that the Plaintiff was not similarly situated to the group and that her claims should be tried independently. *Id.*

Plaintiff also contended that AMS would not be able to meet its burden to prove that AMS acted in good faith in classifying and compensating Plaintiff and the Field Representatives, which would implicate the amount, if any, of liquidated damages. *See* 29 U.S.C. § 260. AMS maintained that it acted in good faith so that damages (if any) should not include liquidated damages.

The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. The Settlement was reached with the aid of a private mediator after arm's length negotiations.

The Parties worked to resolve various complex, disputed issues, such as issues regarding conditional certification and damage calculations. If this case was not contemporaneously settled, there would undoubtedly be extensive future work to come, including dispositive motions, depositions, associated discovery disputes, questions regarding applicability of the FLSA, good faith, decertification, pretrial motions, trial, and potential appellate issues. Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and recognized that their Settlement represented a compromise of the range and uncertainty of their damages. *Id.* at ¶ 15.

Finally, both Plaintiff and Plaintiff's Counsel believe that this Settlement is in the best interest of both Plaintiff and the Proposed FLSA Collective. The Parties disputed whether collective treatment of Plaintiff's FLSA claims was appropriate in this matter, and whether Plaintiff was entitled to liquidated damages. Moreover, AMS would undoubtedly challenge final certification of the class, including moving for decertification of the collective class following additional and complex discovery. This process would have been time-consuming and expensive for all Parties, and should Plaintiff have ultimately prevailed, the additional time prior to Plaintiff receiving relief, if any, could have been substantial. *Id*. at ¶¶ 13-14, 16, 20.

## B. The Settlement Agreement Is The Product of Informed, Non-Collusive Negotiation.

Whether a settlement arises from arm's-length negotiations is a key factor in deciding whether to grant preliminary approval. *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001) (quoting Manual for Complex Litigation (Second) §30.44). Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d]

and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at \*18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case, that "the endorsement of the parties' counsel is entitled to significant weight."). The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. "There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at \*1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, No. CIV.A. 01-2680, 2004 WL 2149079, at \*5 (E.D. La. Sept. 23, 2004)).

Here, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Counsel for all Parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Lawsuit after extensive formal and informal discovery on all issues over the life of this litigation. *See* Rodriguez Decl. ¶¶ 2-5, Ex. A; *Austin v. Pennsylvania Dep't of Corrs*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of

13

experienced antitrust counsel is entitled to great weight."); *Fisher Bros. v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The Parties have been litigating this case for over eleven months. The Parties conducted informal discovery, and they have disputed damages and liability which informed the Parties' respective positions on all issues in this case. And after the Parties reached an agreement in principle, the Parties engaged in further negotiations concerning the specific terms of the Settlement and the scope of the Agreement. Indeed, it cannot be gainsaid that the settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

As such, the current Settlement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

**C. The Terms of the Settlement are Fair and Reasonable.**

Finally, the Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *Compare Brown v. TrueBlue, Inc.*, No. 1:10-CV-00514, 2013 WL 5408575, at *3 (M.D. Pa. Sept. 25, 2013) (finding settlement agreement frustrated the

14

implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards) *with Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718 at *3 (holding that provision limiting press coverage does not frustrate the purpose of the FLSA).

Indeed, the Settlement furthers the purposes of the FLSA by providing Plaintiff and the Settlement Collective Members with substantial recovery for their unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the Settlement facilitates the purposes of the FLSA it should be approved as reasonable.

### D. The Attorney's Fee Award to Plaintiff's Counsel is Reasonable.

Plaintiff's Counsel's request for one-third (1/3) of the Gross Settlement Amount for the contingency fee is also fair and reasonable and AMS does not oppose such an award. With respect to the FLSA claims, "Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid

wages under the FLSA." *Green v. Ventnor Beauty Supply, Inc*., No. 118CV15673NLHAMD, 2019 WL 2099821, at *2 (D.N.J. May 14, 2019) (Hillman, J.) (citing 29 U.S.C. § 216(b)). *See also Salinas v. U.S. Xpress Enterprises, Inc.,* No. 113CV00245TRMSKL, 2018 WL 1477127, at *8 (E.D. Tenn. Mar. 8, 2018) ("The FLSA contains a fee-shifting provision that provides that the prevailing party shall recover reasonable attorney's fees and litigation costs. Award of attorney fees under the FLSA are mandatory, though the Court has discretion over the amount of fees due the attorneys.") (citing 29 U.S.C. §. 216(b)).

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). Plaintiff reached the agreed upon fee after reaching a Settlement that dwarfs the average overtime settlement and ensures Plaintiff and the Settlement Collective Members will be paid promptly. To the extent approval is necessary, it should be given here.

Further, this is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the

court to require the parties to accept a settlement to which they have not agreed."). Courts have found that "any process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *See, e.g.*, *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action).

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs.,* 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005).

When calculating attorneys' fees in common fund cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). "Indeed, it is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Mulroy v. Nat'l Water Main Cleaning Co. of New Jersey*, No. CIV.A. 12-3669 WJM, 2014 WL 7051778, at *6 (D.N.J. Dec. 12, 2014) (citing,

17

*e.g., In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009) and *Chemi v. Champion Mortg.,* No. 2:05-CV-1238(WHW), 2009 WL 1470429, at *10 (D.N.J. May 26, 2009)); *Maddy v. Gen. Elec. Co.*, No. CV 14-490-JBS-KMW, 2017 WL 2780741, at *6 (D.N.J. June 26, 2017) (granting fee request, and noting that percentage-of-recovery method is the prevailing methodology in the Third Circuit for wage-and-hour cases) (citing *Bredbenner*, 2011 WL 1344745 at *19).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court considers ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000) and *In re Prudential*, 148 F.3d at 342).

The Third Circuit has stressed that these factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig*., 396 F. 3d 294, 301 (3d Cir. 2005). These factors support approval of the requested fee and are discussed below.

### 1.  The Size of the Fund Created Supports the Requested Fee.

"As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Bredbenner,* 2011 WL 1344745 at \*19 (citing *In re Cendant Corp. Prides Litig.,* 243 F.3d 722, 736 (3d Cir. 2001)). The inverse relationship is predicated on the belief that increases in recovery are usually a result of the size of the class and not a result of the efforts of counsel. *Id.* The Settlement achieved in this case, while substantial, does not create a "mega-fund." *Bredbenner*, 2011 WL 1344745 at \*19; *see also Cendant*, 243 F.3d at 736-37. Moreover, the results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. There is no claims process and a Plaintiff need not take any action in order to receive a settlement award. For these reasons, the Settlement creates a substantial benefit for Plaintiff and Settlement Collective Members. *See, e.g., Chemi,* 2009 WL 1470429 at \*10 ("While the current matter does not qualify as a 'very large settlement,' it is still significant that Plaintiffs have secured $1.2 million for the 917 class members"); *Maddy*, 2017 WL2780741 at \*7 ("[T]here is tremendous benefit to the Class Members in light of the stage of the

litigation, the remaining hurdles prior to even arriving at a trial date, and the risks associated with continued litigation").

### 2.  The Response of the Plaintiff Supports the Requested Fee.

It is important to note that Plaintiff Share, the representative plaintiff on behalf of her former coworkers, deems this settlement fair and reasonable. This is the Agreement that the Parties have presented to the Court for approval. *See Evans*, 475 U.S. at 726-27 ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[T]he court cannot modify the bargained-for terms of the [class-action] settlement agreement.").

### 3.  The Skill and Efficiency of Class Counsel Support the Requested Fee.

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi*, 2009 WL 1470429 at *11 (internal quotations omitted); *accord Maddy*, 2017 WL 2780741 at * 7.

Here, Plaintiff's Counsel includes attorneys with significant employment law as well as class and collective action experience, assumed a very real risk in taking

the case on a contingency basis, and were prepared to invest time, effort and money over a period of years with no guarantee of any recovery. These factors all weigh in favor of the requested fees. *See Maddy*, 2017 WL 2780741 at *7 (finding Gunter factors satisfied, and granting fee request, noting that the "issues in this case were thoroughly contested and this matter was 'hard-fought' by skilled, professional counsel" that the case was brought to a close prior to trial, and that "[s]imply stated, class counsel took this case on a pure contingency basis, waiving recoupment of all costs").

The Settlement reached with Defendant, which involves complex provisions that are specific to the FLSA wage and hour laws, is a reflection of Plaintiff's Counsel's experience. This Settlement was the result of contested litigation, factual discovery and arm's length negotiations. This Settlement was reached only after (1) negotiating the stipulation of conditional certification; (2) the exchange of substantial documents and records through both formal and informal discovery; (3) multiple pre-mediation conference calls; and (4) an in-person mediation session over Zoom, which included additional arm's length negotiations between counsel for the Parties both before and after the mediation. The Settlement provides Plaintiff and the Settlement Collective Members with substantial benefits without having to wait for years of drawn-out litigation. Accordingly, this factor favors the requested fee. *See* Rodriguez Decl. ¶ 37.

### 4. The Amount of Time Devoted to the Case Supports the Requested Fee.

Plaintiff has been pursuing this matter since March of 2021. Counsel has spent considerable time evaluating the claims at issue in this case, prosecuting the matter, analyzing damages, and negotiating a fair settlement of this matter. Indeed, as of February 11, 2022, Plaintiff's Counsel has spent 318.3 hours prosecuting the action for a total lodestar of $171,898.00. The proposed fee award of $166,666.67 represents a multiplier of approximately .97 of Plaintiff's Counsel's actual lodestar. Rodriguez Decl. ¶ 40. Accordingly, a fee of one-third (1/3) of the Gross Settlement Amount is reasonable and necessary in this case, and indeed, it would not even fully compensate Plaintiff's counsel for its actual, current lodestar in the action (in addition to Plaintiff's Counsel's request for reimbursement for reasonable and necessary expenses associated with prosecuting this matter as set forth in the Agreement). *Id*. at ¶¶ 36, 39, 43.

### 5. The Awards in Similar Cases Supports the Requested Fee.

The requested fee is also consistent with awards in similar cases. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. *See Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 498 (E.D. Pa. 2018) ("As discussed, most fee awards in common fund cases range from 19% to 45% of the settlement fund. More specifically, fee awards

22

ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million—funds which are comparatively smaller than many common funds.").

Here, Plaintiff's Counsel's request for one-third (1/3) of the Gross Settlement Fund is consistent with the norms of wage and hour class and collective litigation in this Circuit and across the country. Indeed, in the Third Circuit, "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, *4 (E.D. Pa. Aug. 24, 2015) (collecting cases). Accordingly, the fees approved in similar cases further support the requested fee here.

## V.    CONCLUSION

The terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data obtained from AMS and after extensive negotiations. The Settlement provides AMS with the highest possible absolution to resolve the pay practice at issue. Because of the various defenses asserted by AMS and the possibility that AMS may have successfully defeated or limited some or all of Plaintiff's claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a reasonable and fair compromise of the Parties' dispute.

Moreover, given the strong likelihood that absent a settlement this case would have proceeded to lengthy and drawn-out litigation, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby request that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) direct the Parties to implement the settlement process as set forth in the Agreement; and (3) dismiss the claims of Plaintiff with prejudice.

Dated: February 11, 2022                 Respectfully submitted,

                                         /s/ Camille Fundora Rodriguez
                                         Shanon J. Carson, *pro hac vice*
                                         Camille Fundora Rodriguez (NJ No. 909682012)
                                         Alexandra K. Piazza (NJ No. 010922013)
                                         BERGER MONTAGUE PC
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA 19103
                                         Tel.: (215) 875-3000
                                         Fax: (215) 875-4604
                                         scarson@bm.net
                                         crodriguez@bm.net
                                         apiazza@bm.net

                                         *Attorney for the Plaintiff and the Proposed FLSA Collective*

## <u>CERTIFICATE OF SERVICE</u>

I served a copy of this document on all counsel of record via the Court's ECF

system on February 11, 2022.

*/s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez